UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

NANCY RIVERA,                         :

                    Plaintiff,    :    15 Civ. 8439 (GBD)(HBP)

    -against-                         :    REPORT AND
                                           RECOMMENDATION
COMMISSIONER OF SOCIAL SECURITY,   :

                    Defendant,    :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE GEORGE B. DANIELS, United States

District Judge:


I.   Introduction


          Plaintiff Nancy Rivera brings this action pursuant to

Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C.

§ 405(g), seeking judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her

application for disability insurance benefits ("DIB").  The

Commissioner and plaintiff have both moved for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  For the reasons set forth below, I respectfully recommend that plaintiff's motion (Docket Items ("D.I.") 17, 22) be granted and that the Commissioner's motion (D.I. 24) be denied.

## II.   Facts[1]

### A.   Procedural Background

Plaintiff filed an application for DIB on July 25, 2012, alleging that she had been disabled since January 9, 2012 (Tr. 124-30).  Plaintiff completed a "Disability Report" in support of her claim for benefits (Tr. 151-57).  Plaintiff claimed that she was disabled because her "[r]ight knee is very swollen," she had "chronic pain" and she "walk[s] with a cane" (Tr. 152).  Plaintiff reported that she took the following medications:  400 milligrams of Etodolac for inflammation and 50 milligrams of Tramadol for pain, as prescribed by the East Tremont Medical Center (Tr. 154).  Plaintiff also reported that

---

[1] I recite only those facts relevant to my resolution of the pending motion.  The administrative record that the Commissioner filed, pursuant to 42 U.S.C. § 405(g) (see SSA Administrative Record, dated Dec. 16, 2015 (D.I. 14) ("Tr.")) more fully sets out plaintiff's medical history.

she went to physical therapy for her knee and had undergone an arthroscopy[2] (Tr. 155).

On August 22, 2012, the Social Security Administration ("SSA") denied plaintiff's application, finding that she was not disabled (Tr. 51-54).  Plaintiff timely requested and was granted a hearing before an Administrative Law Judge ("ALJ") (Tr. 57-59).  ALJ Sean P. Walsh scheduled a hearing on April 7, 2014, but it was postponed so that plaintiff could obtain representation (Tr. 35-40).  The ALJ subsequently held a hearing on August 1, 2014 (Tr. 20-34).  The ALJ reviewed the claim de novo and, in a decision dated September 17, 2014, determined that the relevant time period was from January 9, 2012 through the date on which plaintiff was last insured, i.e., June 30, 2012, and that plaintiff was not disabled within the meaning of the Act during this time period (Tr. 7-19).[3]  The ALJ's decision denying benefits became final on October 13, 2015 when the Appeals Council denied plaintiff's request for review (Tr. 1-4).  Plaintiff commenced

---

[2]An arthroscopy is an "examination of the interior of a joint with an arthroscope."  Dorland's Illustrated Medical Dictionary ("Dorland's") 158 (32nd ed. 2012).

[3]As discussed further below, to obtain DIB, the claimant's disability must have commenced prior to the expiration of her insured status.  See 42 U.S.C. §§ 416(i), 423(a); 20 C.F.R. §§ 404.130, 404.315.

this action on October 28, 2015 seeking review of the Commis-
sioner's decision (Complaint, filed Oct. 28, 2015 (D.I. 5)).

B. Plaintiff's
   Social Background

Plaintiff was born in 1958 and was 56 years old at the
time of her hearing before the ALJ (Tr. 22-23).  She attended the
University of Puerto Rico but did not graduate (Tr. 23).

At her hearing before the ALJ, plaintiff testified that
she stopped working in 2011 because she suffered a fall that
injured her knee (Tr. 23).  At that time, she had been working as
a tutor (Tr. 23).  Prior to becoming a tutor, plaintiff was a
receptionist and a counselor at a social services agency (Tr. 23-
24).

According to a September 2012 Federation Employment &
Guidance Service ("F.E.G.S.") report, plaintiff reported feeling
depressed because of her knee injury (Tr. 235).  Plaintiff also
said that she received emotional support from her daughter (Tr.
236).

4

C.  Plaintiff's
    Medical Background

    1.  Records that Pre-Date the
        Relevant Time Period

An x-ray of plaintiff's knees taken on October 6, 2011, after plaintiff's fall, showed early osteoarthritis[4] of both knees about the medial joint space compartment (Tr. 196).  A magnetic resonance imaging ("MRI") study of her right knee taken on October 14, 2011 showed joint effusion[5] with a sprain of the medial collateral ligament and tearing of the medial meniscus (Tr. 195).  On October 25, 2011, plaintiff was prescribed four weeks of physical therapy (Tr. 220).  On examination by the physical therapist, plaintiff had increased lumbar lordosis, guarding of the right knee, positive McMurray testing[6] and an antalgic gait (Tr. 213-14).  The physical therapist also noted

_____

[4]Osteoarthritis is "a noninflammatory degenerative joint disease seen mainly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane."  Dorland's at 1344.  The disease is usually accompanied by pain and stiffness.  Dorland's at 1344.

[5]Effusion is "the escape of fluid into a part or tissue."  Dorland's at 595.

[6]A McMurray test is used to determine whether there is a tear in the meniscus.  Rodriquez v. Astrue, No. 12-CV-4103, 2013 WL 1282363 at *7 n.45 (E.D.N.Y. Mar. 28, 2013); Sharts v. Astrue, No. 4:11-CV-00432, 2012 WL 3027847 at *5 n.15 (M.D. Pa. July 24, 2012); see Dorland's at 1894.

that plaintiff could walk one block (Tr. 213).  On November 29,
2011, plaintiff received a right medial collateral ligament
steroid injection (Tr. 179).

Dr. Stuart S. Remer, M.D., an orthopedist, examined
plaintiff on December 21, 2011.  Plaintiff reported intermittent,
moderate-to-severe pain, which she said was exacerbated by
walking (Tr. 182).  Plaintiff also reported that physical therapy
had helped for a short period (Tr. 182).  Dr. Remer's physical
examination of plaintiff revealed tenderness, swelling and a
restricted range of motion in her right knee (Tr. 182).  Dr.
Remer recommended that plaintiff undergo an arthroscopy (Tr.
182).

2.    Records for the
      Relevant Time Period:
      January 9, 2012
      to June 30, 2012

Dr. Remer performed an arthroscopy on plaintiff's right
knee on January 9, 2012 (Tr. 174-75).  After the arthroscopy, Dr.
Remer diagnosed the following conditions in plaintiff's right
knee:  torn medial meniscus posterior horn, extensive synovitis[7]

----

[7]Synovitis is inflammation of the synovial membrane.
Dorland's at 1856.  The condition is "usually painful, particu-
larly on motion."  Dorland's at 1856.

of medial and lateral compartments and grade two chondromalacia[8]
of the medial femoral condyle, grade four chondromalacia of the
medial tibial condyle and grade two chondromalacia of the patella
(Tr. 174).

　　　　At a follow-up appointment with Dr. Remer on January
19, 2012, plaintiff reported that her movement was improving, but
that she was still experiencing moderate pain (Tr. 180).  Plain-
tiff also stated that she was using a cane to walk (Tr. 180).
Dr. Remer removed plaintiff's sutures and referred her to a
physiatrist for treatment (Tr. 180).  Plaintiff's physiatrist
noted that plaintiff could walk and stand for 15 minutes and sit
for one hour, and recommended further physical therapy (Tr. 202,
204).

　　　　After completing approximately three months of physical
therapy, plaintiff saw Dr. Remer on May 16, 2012 (Tr. 225).
Although plaintiff reported that physical therapy and pain
medication offered some relief for her right knee pain, it did
not provide complete relief (Tr. 225).  Dr. Remer's physical

---

　　　　[8]Chondromalacia is "softening of the articular cartilage."
<u>Dorland's</u> at 352.

7

examination revealed no edema[9] or erythema,[10] but did show fine crepitus[11] and tenderness (Tr. 225).  In a follow-up appointment on June 13, 2012, plaintiff indicated that her right knee pain was a six on a scale of one to ten (Tr. 176).  A physical examination of her right knee showed swelling (Tr. 176).  Dr. Remer ordered an MRI of her right knee (Tr. 176).

On June 21, 2012, plaintiff reported increased pain in her right knee (Tr. 173).  An examination of the knee showed crepitus, swelling and a restricted range of motion (Tr. 173).  Dr. Remer determined that plaintiff had severe degenerative joint disease in her right knee and recommended a right knee replacement (Tr. 173).

### 3.   Records that Post-Date the Relevant Time Period

On July 18, 2012, plaintiff reported continuing right knee pain to Dr. Remer (Tr. 222).  An x-ray taken of plaintiff's knee showed advanced osteoarthritis changes with severe synovitis

---

[9]Edema is "the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body."  Dorland's at 593.

[10]Erythema is "redness of the skin produced by congestion of the capillaries."  Dorland's at 643.

[11]Crepitus is a "grating sensation" caused by the dry synovial surfaces of joints rubbing together.  Dorland's at 429.

(Tr. 222).  A physical examination of the knee showed tenderness, pain, swelling and a reduced range of motion (Tr. 222).

On September 5, 2012, plaintiff was assessed at the F.E.G.S. health care facility (Tr. 227-45).  Her Patient Health Questionnaire-9 ("PHQ-9") score was a nine, which represents mild depression (Tr. 235).  The report indicated that plaintiff came to the appointment by herself by bus and that plaintiff reported having difficulty traveling on the subway due to pain in her right knee (Tr. 235).  Plaintiff also reported that she could wash dishes and clothes, sweep and mop floors, vacuum, watch television, make beds, shop for groceries, cook meals, read, socialize, get dressed, bathe, use the toilet and groom herself (Tr. 235-36).  Plaintiff also reported that she could only walk one to two blocks (Tr. 242).  During an examination with F.E.G.S. hospital physician Robert Marc Romanoff, plaintiff reported right knee pain (Tr. 240-41).  Dr. Romanoff noted that plaintiff's level of pain was a three on a scale of one to ten and was a five at its worst (Tr. 241).  Moreover, a physical examination showed no abnormal results in plaintiff's musculoskeletal system or elsewhere (Tr. 241).

Plaintiff had a total right knee replacement in August 2013 (Tr. 25).  On May 20, 2014, Julia Kaci, M.D. performed a consultative orthopedic examination on plaintiff (Tr. 258-61).

9

Plaintiff reported that she could not cook, clean, do laundry, shop or care for children because of pain (Tr. 259).  A physical examination showed a limited range of motion in the right knee, pitting edema in the right lower leg and joint effusion and inflammation bilaterally (Tr. 260).  Dr. Kaci diagnosed plaintiff with right knee pain status post total knee replacement, left knee pain and low back pain (Tr. 260).  Dr. Kaci stated that plaintiff could not walk on her heels and toes and needed help getting on and off the examination table (Tr. 259).  Additionally, Dr. Kaci noted that plaintiff had marked limitations in walking, climbing stairs, kneeling, squatting and standing, as well as moderate limitations in bending, lifting and carrying (Tr. 260).

Dr. Kaci also completed a corresponding functional assessment, in which she concluded that plaintiff could lift and carry up to twenty pounds frequently and up to fifty pounds occasionally, sit for thirty minutes at a time and for four hours total in an eight-hour workday, stand for fifteen minutes at a time and for two hours total in a workday and walk for ten minutes at a time and for one hour total in a workday (Tr. 262-63).  Dr. Kaci also found that plaintiff could not walk more than twenty to thirty feet without use of a cane and that she could not climb, balance, stoop, kneel, crouch or crawl (Tr. 263, 265).

10

Finally, Dr. Kaci found that while plaintiff could not shop, travel without a companion or walk a block at a reasonable pace on rough or uneven surfaces, plaintiff could use standard public transportation and climb a few steps at a reasonable pace with the use of a single hand rail (Tr. 267).

After the ALJ issued his decision, physician Marc Silverman, M.D. assessed plaintiff (Tr. 41-44). He opined that plaintiff could occasionally lift and/or carry less than ten pounds in an eight-hour workday, stand and/or walk for less than two hours in a workday, sit for less than six hours in a workday and push and/or pull with some restrictions (Tr. 42-44). Although Dr. Silverman's assessment was submitted to the Appeals Council, the Appeals Council declined to consider it because it post-dated the relevant time period (Tr. 2)

D.  Proceeding
    Before the ALJ

An attorney represented plaintiff at the August 1, 2014 hearing before ALJ Walsh (Tr. 10, 22). Plaintiff testified at the hearing. She explained that in 2011, she slipped and fell (Tr. 24-25). As a result of that accident, plaintiff's right knee "started bothering" her and she stopped working (Tr. 24). Plaintiff testified that she first had an arthroscopy for the

knee, and then underwent a total knee replacement in August 2013 (Tr. 25).   After the knee replacement, plaintiff explained that she stayed in rehabilitation for one month and then had physical therapy, but that her knee remains symptomatic (Tr. 25-28).

Plaintiff testified that she requires a prescribed cane to walk and that she takes Naproxen (Tr. 30).   Plaintiff reported that her pain was a seven on a scale of one to ten (Tr. 31).   She stated that she could stand for approximately five to ten minutes without a cane, and fifteen to twenty minutes with a cane (Tr. 31).   Plaintiff also testified that "sitting is not good" because of swelling in both of her knees (Tr. 31).   Plaintiff said that because of the pain caused by sitting, she needs to change from sitting to standing every ten to fifteen minutes (Tr. 31-32). She also noted that her doctor referred her for more physical therapy because her right knee remains symptomatic (Tr. 32).

Plaintiff testified that she also has other impair-ments.   Specifically, plaintiff testified that she requires arthroscopy on her left knee (Tr. 26).   Plaintiff also testified that she has "bad arthritis" in her hands, hypertension and asthma (Tr. 30).

The ALJ kept the record open for 30 days following the hearing so that plaintiff's attorney could submit additional records, including an RFC assessment from a treating source (Tr.

12

32-33).  However, plaintiff's attorney did not submit any addi-
tional medical records (Tr. 10).

III.  <u>Analysis</u>

    A.  Applicable
       <u>Legal Principles</u>

       1.  <u>Standard of Review</u>

      The Court may set aside the final decision of the
Commissioner only if it is not supported by substantial evidence
or if it is based upon an erroneous legal standard.  42 U.S.C.
§ 405(g); <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013) (<u>per
curiam</u>); <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012);
<u>Burgess v. Astrue</u>, 537 F.3d 117, 127 (2d Cir. 2008).  Moreover,
the court cannot "'affirm an administrative action on grounds
different from those considered by the agency.'"  <u>Lesterhuis v.
Colvin</u>, 805 F.3d 83, 87 (2d Cir. 2015) (<u>per curiam</u>), <u>quoting
Burgess v. Astrue</u>, <u>supra</u>, 537 F.3d at 128.

      The Court first reviews the Commissioner's decision for
compliance with the correct legal standards; only then does it
determine whether the Commissioner's conclusions were supported
by substantial evidence.  <u>Byam v. Barnhart</u>, 336 F.3d 172, 179 (2d
Cir. 2003) (citation omitted).  "Even if the Commissioner's

decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." Ellington v. Astrue, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (Marrero, D.J.). However, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

        "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Talavera v. Astrue, supra, 697 F.3d at 151, quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). Consequently, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam), quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982). Thus, "[i]n determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Selian v. Astrue, supra, 708 F.3d at 417 (internal quotation marks omitted).

2.   Determination
     of Disability

Under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., a claimant is entitled to disability insurance benefits if she can establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both impairment and inability to work must last twelve months).[12]  The impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques," 42 U.S.C. § 423(d)(3), and it must be

> of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy exists for [the claimant], or whether [the claimant] would be hired if [the claimant] applied for work.

42 U.S.C. § 423(d)(2)(A).  In addition, to obtain DIB, the

---

[12]The standards that must be met to receive DIB are the same as the standards that must be met to receive Supplemental Security Income benefits under Title XVI of the Act.  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, cases addressing the latter are equally applicable to cases involving the former.

claimant must have become disabled between the alleged onset date
and the date on which she was last insured.  See 42 U.S.C. §§
416(i), 423(a); McKinstry v. Astrue, 511 F. App'x 110, 111 (2d
Cir. 2013) (summary order), citing Kohler v. Astrue, 546 F.3d
260, 265 (2d Cir. 2008); 20 C.F.R. §§ 404.130, 404.315.

       In making the disability determination, the Commis-
sioner must consider:  "'(1) the objective medical facts; (2)
diagnoses or medical opinions based on such facts; (3) subjective
evidence of pain or disability testified to by the claimant or
others; and (4) the claimant's educational background, age, and
work experience.'"  Brown v. Apfel, 174 F.3d 59, 62 (2d Cir.
1999) (per curiam), quoting Mongeur v. Heckler, 722 F.2d 1033,
1037 (2d Cir. 1983).

       In determining whether an individual is disabled, the
Commissioner must follow the five-step process required by the
regulations.  20 C.F.R. § 404.1520(a)(4)(i)-(v); see Selian v.
Astrue, supra, 708 F.3d at 417-18; Talavera v. Astrue, supra, 697
F.3d at 151.  The first step is a determination of whether the
claimant is engaged in substantial gainful activity.  20 C.F.R. §
404.1520(a)(4)(i).  If she is not, the second step requires
determining whether the claimant has a "severe medically determi-
nable physical or mental impairment."  20 C.F.R.
§ 404.1520(a)(4)(ii).  If the claimant does not have a severe

16

medically determinable impairment or combination of impairments, she is not disabled.  See Henningsen v. Commissioner of Soc. Sec. Admin., 111 F. Supp. 3d 250, 264 (E.D.N.Y. 2015); 20 C.F.R. § 404.1520(c).  If she does, the inquiry at the third step is whether any of these impairments meet one of the listings in Appendix 1 of the regulations.  20 C.F.R. § 404.1520(a)(4)(iii). If the answer to this inquiry is affirmative, the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not meet any of the listings in Appendix 1, step four requires an assessment of the claimant's RFC and whether the claimant can still perform her past relevant work given her RFC.  20 C.F.R. § 404.1520(a)(4)(iv); see Barnhart v. Thomas, supra, 540 U.S. at 24-25.  If she cannot, then the fifth step requires assessment of whether, given the claimant's RFC, she can make an adjustment to other work.  20 C.F.R. § 404.1520(a)(4)(v).  If she cannot, she will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v).

RFC is defined in the applicable regulations as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).  To determine RFC, the ALJ "'identif[ies] the individual's functional limitations or re-strictions and assess[es] his or her work-related abilities on a function-by-function basis, including the functions in paragraphs

(b),(c), and (d) of 20 [C.F.R. §§] 404.1545 and 416.945.'"
Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (per
curiam), quoting Social Security Ruling ("SSR") 96-8p, 1996 WL
374184 at *1 (July 2, 1996).  The results of this assessment
determine the claimant's ability to perform the exertional
demands of sustained work which may be categorized as sedentary,
light, medium, heavy or very heavy.[13]  20 C.F.R. § 404.1567; see
Schaal v. Apfel, 134 F.3d 496, 501 n.6 (2d Cir. 1998).  This
ability may then be found to be limited further by nonexertional
factors that restrict the claimant's ability to work.[14]  See
Michaels v. Colvin, 621 F. App'x 35, 38 n.4 (2d Cir. 2015)
(summary order); Zabala v. Astrue, 595 F.3d 402, 410-11 (2d Cir.
2010).

    The claimant bears the initial burden of proving
disability with respect to the first four steps.  Once the
claimant has satisfied this burden, the burden shifts to the

--------

[13]Exertional limitations are those which "affect only [the
claimant's] ability to meet the strength demands of jobs (sit-
ting, standing, walking, lifting, carrying, pushing, and pull-
ing)."  20 C.F.R. § 404.1569a(b).

    [14]Nonexertional limitations are those which "affect only
[the claimant's] ability to meet the demands of jobs other than
the strength demands," including difficulty functioning because
of nervousness, anxiety or depression, maintaining attention or
concentration, understanding or remembering detailed instruc-
tions, seeing or hearing, tolerating dust or fumes, or manipula-
tive or postural functions, such as reaching, handling, stooping,
climbing, crawling or crouching.  20 C.F.R. § 404.1569a(c).

Commissioner to prove the final step -- that the claimant's RFC allows the claimant to perform some work other than her past work.  Selian v. Astrue, supra, 708 F.3d at 418; Burgess v. Astrue, supra, 537 F.3d at 128; Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended in part on other grounds on reh'q, 416 F.3d 101 (2d Cir. 2005).

### 3. Duty to Develop the Record

"It is the rule in [the Second] [C]ircuit that 'the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996), quoting Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982); see also 20 C.F.R. § 404.1512(d).

> This duty exists even when the claimant is represented
> by counsel or . . . by a paralegal . . . . The [Commis-
> sioner's] regulations describe this duty by stating
> that, "[b]efore we make a determination that you are
> not disabled, we will develop your complete medical
> history . . . [and] will make every reasonable effort
> to help you get medical reports from your own medical
> sources when you give us permission to request the
> reports."  20 C.F.R. § 404.1512(d).

Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); accord Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (summary order)

("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel." (internal quotation marks omitted, alteration in original)); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) ("We have stated many times that the ALJ generally has an affirmative obligation to develop the administrative record . . . ." (internal quotation marks omitted)); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."); Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (same); Van Dien v. Barnhart, 04 Civ. 7259 (PKC), 2006 WL 785281 at *14 (S.D.N.Y. Mar. 24, 2006) (Castel, D.J.) (same).

The ALJ is required "affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." Eusepi v. Colvin, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order), quoting Rosa v. Callahan, 168 F.3d 72, 79 & n.5 (2d Cir. 1999); accord Swiantek v. Commissioner of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (summary order).[15]

---

[15]On March 26, 2012, the regulations were modified to delete language which imposed a duty to recontact a treating physician when "the report from [a claimant's] medical source contain[ed] a
(continued...)

"[T]he current amended regulations . . . give an ALJ more discre-
tion to 'determine the best way to resolve the inconsistency or
insufficiency' based on the facts of the case . . . ."  Rolon v.
Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 505 (S.D.N.Y.
2014) (Nathan, D.J.), quoting 20 C.F.R. §§ 404.1520b(c)(1),
416.920b(c)(1) (2013).  However, the regulations continue to
"contemplate the ALJ recontacting treating physicians when 'the
additional information needed is directly related to that source-
's medical opinion.'"  Jimenez v. Astrue, 12 Civ. 3477 (GWG),
2013 WL 4400533 at *11 (S.D.N.Y. Aug. 14, 2013) (Gorenstein,
M.J.), quoting How We Collect and Consider Evidence of Disabil-
ity, supra, 77 Fed. Reg. at 10,652.

> "[I]f a physician's finding in a report is believed to
> be insufficiently explained, lacking in support, or
> inconsistent with the physician's other reports, the
> ALJ must seek clarification and additional information
> from the physician." Calzada v. Asture, 753 F. Supp.
> 2d 250, 269 (S.D.N.Y. 2010); see also Rosa, 168 F.3d at
> 79 (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir.
> 1996)).  The rationale behind this rule is that "a

---

[15](...continued)
conflict or ambiguity that must be resolved, the report does not
contain all the necessary information, or does not appear to be
based on medically acceptable clinical and laboratory diagnostic
techniques."  20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (2010);
see How We Collect & Consider Evidence of Disability, 77 Fed.
Reg. 10,651, 10,651 (Feb. 23, 2012) (codified at 20 C.F.R. pts.
404, 416).  The amended regulations apply here.  See Lowry v.
Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (summary order)
(applying the version of the regulations that were current at the
time the ALJ adjudicated the plaintiff's claim).

> treating physician's 'failure to include this type of
> support for the findings in his report does not mean
> that such support does not exist; he might not have
> provided this information in the report because he did
> not know that the ALJ would consider it critical to the
> disposition of the case.'"  Rosa, 168 F.3d at 80 (quot-
> ing Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d
> Cir. 1998)).

Geronimo v. Colvin, 13 Civ. 8263 (ALC), 2015 WL 736150 at *5

(S.D.N.Y. Feb. 20, 2015) (Carter, D.J.).


    4.  Treating Physician Rule


In considering the evidence in the record, the ALJ must give deference to the opinions of a claimant's treating physicians.  A treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2); see also Shaw v. Chater, supra, 221 F.3d at 134; Diaz v. Shalala, 59 F.3d 307, 313 n.6 (2d Cir. 1995); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993).

"[G]ood reasons" must be given for declining to afford a treating physician's opinion controlling weight.  20 C.F.R. § 416.927(c)(2); see Schisler v. Sullivan, supra, 3 F.3d at 568; Burris v. Chater, 94 Civ. 8049 (SHS), 1996 WL 148345 at *4 n.3 (S.D.N.Y. Apr. 2, 1996) (Stein, D.J.).  The Second Circuit has

noted that it "'do[es] not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician[']s opinion.'" Morgan v. Colvin, 592 F. App'x 49, 50 (2d Cir. 2015) (summary order) (second alteration in original), quoting Halloran v. Barnhart, supra, 362 F.3d at 33; accord Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). Before an ALJ can give a treating physician's opinion less than controlling weight, the ALJ must consider various factors to determine the amount of weight the opinion should be given. These factors include: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical support for the treating physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) the physician's level of specialization in the area and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)-(6); see Schisler v. Sullivan, supra, 3 F.3d at 567; Mitchell v. Astrue, 07 Civ. 285 (JSR), 2009 WL 3096717 at *16 (S.D.N.Y. Sept. 28, 2009) (Rakoff, D.J.); Matovic v. Chater, 94 Civ. 2296 (LMM), 1996 WL 11791 at *4 (S.D.N.Y. Jan. 12, 1996) (McKenna, D.J.). Although the foregoing factors guide an ALJ's assessment of a treating physician's opinion, the ALJ need not expressly address each factor. Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir.

23

2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

    As long as the ALJ provides "good reasons" for the weight accorded to the treating physician's opinion and the ALJ's reasoning is supported by substantial evidence, remand is unwarranted. See Halloran v. Barnhart, supra, 362 F.3d at 32-33; see also Atwater v. Astrue, supra, 512 F. App'x at 70; Petrie v. Astrue, supra, 412 F. App'x at 406-07; Kennedy v. Astrue, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order). "While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citations omitted). The ALJ is responsible for determining whether a claimant is "disabled" under the Act and need not credit a physician's determination to this effect where it is contradicted by the medical record. See Wells v. Commissioner of Soc. Sec., 338 F. App'x 64, 66 (2d Cir. 2009) (summary order). The ALJ may rely on a consultative opinion where it is supported by substantial evidence in the record. See Richardson v. Perales, supra, 402 U.S. at 410; Camille v. Colvin, 652 F. App'x 25, 27-28 (2d Cir. 2016) (summary

order); <u>Diaz v. Shalala</u>, <u>supra</u>, 59 F.3d at 313 n.5; <u>Mongeur v.</u>
<u>Heckler</u>, <u>supra</u>, 722 F.2d at 1039.

B.   <u>The ALJ's Decision</u>

As an initial matter, the ALJ found that plaintiff last
met the insured status requirements of the Act on June 30, 2012
(Tr. 12).  The ALJ then conducted the analysis described above,
relying on the evidence in the record to determine that plaintiff
was not disabled during the relevant time period (Tr. 12-16).

At step one of the sequential analysis, the ALJ deter-
mined that plaintiff had not engaged in substantial gainful
activity during the relevant time period (Tr. 12, <u>citing</u> 20
C.F.R. § 404.1571 <u>et seq</u>.).

At step two, the ALJ found that plaintiff had the
following severe impairments through June 30, 2012:
osteoarthritis of both knees, hypertension and asthma (Tr. 12,
<u>citing</u> 20 C.F.R. § 404.1520(c)).

At step three, the ALJ found that plaintiff's disabili-
ties did not meet the criteria of the listed impairments and that
plaintiff was not, therefore, entitled to a presumption of
disability (Tr. 12-13).  Specifically, the ALJ found that plain-
tiff's "knee impairment" did not meet listing 1.02 (major dys-
function of a joint(s) due to any cause) because plaintiff's

"ability to walk was not effectively precluded" (Tr. 13).  Citing
the September 2012 F.E.G.S. report, the ALJ noted that plaintiff
"was able to do her household chores; her pain level was only '3'
and her only restriction was to avoid public transportation" (Tr.
13).  The ALJ found that plaintiff's asthma did not meet listing
3.03 (asthma) because there was no evidence that plaintiff was
hospitalized or required emergency treatment for her asthma
during the relevant time period (Tr. 13).

The ALJ then determined that plaintiff retained the RFC
to perform "sedentary work" except that she should avoid "respi-
ratory irritants secondary to her history of asthma" (Tr. 13).
In reaching this determination, the ALJ examined plaintiff's
subjective claims, as well as the F.E.G.S. report, Dr. Kaci's
opinion and the rest of the record.

The ALJ found that plaintiff's "statements concerning
the intensity, persistence and limiting effects of [her] symptoms
[were] not entirely credible" (Tr. 13).  The ALJ noted that while
plaintiff reported depression, her PHQ-9 score at the time was a
nine, indicating only mild depression (Tr. 14).  Moreover, the
ALJ noted that while plaintiff reported difficulty traveling by
subway due to pain in her right knee, the F.E.G.S. report indi-
cated that plaintiff was able to wash dishes and clothes, sweep,
mop, vacuum, make beds, cook, shop, dress and socialize (Tr. 14-

26

15).  Additionally, plaintiff had reported that her level of pain
was only a three on a scale of one to ten and her physical
examination was normal (Tr. 14-15).

Next, the ALJ noted that although Dr. Remer recommended
a right knee replacement in June 2012 and x-rays showed advanced
osteoarthritis in July 2012, Dr. Remer reported on December 21,
2011 that plaintiff's pain was "only intermittent and moderate to
severe, when walking" (Tr. 14).  According to the ALJ, there was
no indication that plaintiff had difficulty sitting or performing
any postural activities at that time (Tr. 14-15).

The ALJ "decline[d] to accord Dr. Kaci's opinion much
weight" because it was rendered two years after the relevant time
period (Tr. 15).  The ALJ stated that although plaintiff's RFC
may have been limited at that time, the other evidence in the
record failed to show that those same restrictions existed during
the relevant time period (Tr. 15-16).  He further noted that
"there is little basis in this record to find that the claimant's
ability to sit is restricted and that she cannot perform any
postural activities" (Tr. 16).

At step four, the ALJ concluded that plaintiff was able
to perform her past relevant work as a receptionist or counselor
(Tr. 16).  Accordingly, the ALJ found that plaintiff was not

27

disabled and did not proceed to the fifth step of the analysis
(Tr. 16).

     C.  Analysis of the
        <u>ALJ's Decision</u>

      Plaintiff contends that the ALJ's decision was not
supported by substantial evidence and should be vacated (Memoran-
dum of Law in Support of Plaintiff's Motion for Judgment on the
Pleadings, dated May 9, 2016 (D.I. 23) ("Pl.'s Mem.").

      As described above, the ALJ went through the sequential
process required by the regulations.  The ALJ's analysis at steps
one and two were decided in plaintiff's favor, and the Government
has not challenged those findings.  I shall, therefore, limit my
discussion to whether the ALJ's analysis at steps three and four
complied with the applicable legal standards and were supported
by substantial evidence.

     1.  ALJ's Analysis at
        <u>Step Three: Listing 1.02</u>

      Plaintiff contends that the ALJ's determination that
plaintiff's right knee impairment did not meet listing 1.02 was
erroneous and was not supported by substantial evidence (Pl.'s
Mem., at 9).  Plaintiff first asserts that the determination of
whether a condition meets or equals a listing "requires the input

28

of a medical expert" and argues that the ALJ should not have drawn his own conclusions (Pl.'s Mem., at 9).  Second, plaintiff argues that the medical evidence demonstrates that plaintiff's ability to walk was seriously impaired during the relevant time period (Pl.'s Mem., at 9).

### a.  Failure to Call a Medical Expert

An ALJ is not required to consult a medical expert to determine whether a plaintiff meets a listing.  The regulations contain permissive language, stating that an ALJ "may . . . ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) and on whether [her] impairment(s) equals the requirements of any impairment" in the listings.  20 C.F.R. § 404.1527(e)(2)(iii) (emphasis added); see Carter v. Commissioner of Soc. Sec., No. 06-CV-186C(F), 2008 WL 1995122 at *5 (W.D.N.Y. May 6, 2008); see also Ortiz v. Colvin, No. 13-CV-6463 (MAT), 2014 WL 3784108 at *7 (W.D.N.Y. July 31, 2014); Van Valkenberg ex rel. B.G. v. Astrue, No. 1:08-CV-0959 (DNH/VEB), 2010 WL 2400455 at *17 (N.D.N.Y. May 27, 2010) (Report & Recommendation), adopted by, 2010 WL 2400443 (N.D.N.Y. June 10, 2010); Van Orden v. Astrue, No. 1:09-cv-81 (GLS/VEB), 2010 WL 841103 at *9 (N.D.N.Y. Mar. 11, 2010).

In addition, SSR 96-6p, 1996 WL 374180 (July 2, 1996)
does not support plaintiff's argument.  According to that ruling,
although "longstanding policy requires that the judgment of a
physician . . . designated by the Commissioner on the issue of
equivalence . . . must be received into the record as expert
opinion evidence and given appropriate weight," the "signature of
a State agency medical . . . consultant on an SSA-831-U5 (Dis-
ability Determination and Transmittal Form) . . . ensures that
consideration by a physician . . . designated by the Commissioner
has been given to the question of medical equivalence."  SSR 96-
6p, 1996 WL 374180 at *3.  The record here contains a Disability
Determination and Transmittal Form, signed by a disability
examiner (Tr. 50).  Moreover, although SSR 96-9p further explains
that an ALJ must obtain an "updated medical opinion from a
medical expert" in two circumstances -- (1) if the ALJ thinks
that the record suggests that a "judgment of equivalence may be
reasonable," if no additional medical evidence has been received,
or (2) if additional medical evidence has been received that may
change "the State agency medical . . . consultant's finding that
the impairment(s) is not equivalent" to a listing, SSR 96-6p,
1996 WL 374180 at *4 -- those circumstances are not present here
because there is no evidence that the ALJ or a state medical
consultant thought that plaintiff's knee impairment may have met

Listing 1.02.  Thus, the ALJ did not err by failing to call a
medical expert.

                b.   Whether the ALJ's
                     Determination Was
                     <u>Supported by Substantial Evidence</u>

    The ALJ's determination that plaintiff's knee impair-
ment did not meet Listing 1.02 is supported by substantial
evidence.

    An applicant meets or equals Listing 1.02 if she has a
major dysfunction of a joint, characterized by

> gross anatomical deformity (<u>e</u>.<u>g</u>., subluxation,
> contracture, bony or fibrous ankylosis, instability)
> and chronic joint pain and stiffness with signs of
> limitation of motion or other abnormal motion of the
> affected joint(s), and . . . joint space narrowing,
> bony destruction, or ankylosis of the affected joint(s-
> ).  With:
>
> A.  Involvement of one major peripheral weight-bearing
> joint (<u>i</u>.<u>e</u>., hip, knee, or ankle), resulting in inabil-
> ity to ambulate effectively . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.  In turn, the List-
ings define "inability to ambulate effectively" as

> an extreme limitation of the ability to walk; <u>i</u>.<u>e</u>., an
> impairment(s) that interferes very seriously with the
> individual's ability to independently initiate, sus-
> tain, or complete activities.  Ineffective ambulation
> is defined generally as having insufficient lower
> extremity functioning . . . to permit independent

> ambulation without the use of a hand-held assistive
> device(s) that limits the functioning of both upper
> extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1).  To

ambulate effectively,

> individuals must be capable of sustaining a reasonable
> walking pace over a sufficient distance to be able to
> carry out activities of daily living.  They must have
> the ability to travel without companion assistance to
> and from a place of employment or school.  Therefore,
> examples of ineffective ambulation include, but are not
> limited to, the inability to walk without the use of a
> walker, two crutches or two canes, the inability to
> walk a block at a reasonable pace on rough or uneven
> surfaces, the inability to use standard public trans-
> portation, the inability to carry out routine ambula-
> tory activities, such as shopping and banking, and the
> inability to climb a few steps at a reasonable pace
> with the use of a single hand rail.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(2).

The ALJ properly determined that plaintiff did not meet

or equal Listing 1.02 because she could ambulate effectively.

Although plaintiff testified about her problems with standing and

sitting (Tr. 31-32), and she reported that her condition affected

her ability to walk (Tr. 242), there is substantial evidence in

the record demonstrating that plaintiff's knee impairment did not

"interfere[] very seriously with [her] ability to independently

initiate, sustain, or complete activities."  For instance,

according to plaintiff and Dr. Remer, plaintiff required only one

cane to stand and walk (Tr. 30, 180).  See Polynice v. Colvin,

No. 8:12-CV-1381 (DNH/ATB), 2013 WL 6086650 at *7 (N.D.N.Y. Nov. 19, 2013) (ALJ's determination that claimant did not meet Listing 1.02 supported by substantial evidence because claimant used single cane to walk), aff'd, 576 F. App'x 28 (2d Cir. 2014) (summary order); DiPalma v. Colvin, 951 F. Supp. 2d 555, 571-72 (S.D.N.Y. 2013) (Peck, M.J.) (same).  In addition, as the ALJ noted, the F.E.G.S. report noted that plaintiff was able to do household chores and take a bus to the appointment (Tr. 235-36). In short, although plaintiff's ambulation was undoubtedly impaired, the impairment did not rise to the level required to meet or equal Listing 1.02.

Dr. Kaci's assessment does not compel a contrary conclusion.  Although Dr. Kaci noted that plaintiff was unable to walk on her heels and toes, needed help getting on and off the examination table, had marked limitations in walking, climbing stairs and standing and could not shop, travel without a companion or walk a block at a reasonable pace on rough or uneven surfaces (Tr. 259-60, 263, 265, 267), Dr. Kaci did not assess plaintiff until May 20, 2014 (Tr. 258), nearly two years after the date on which plaintiff was last insured.

Therefore, the ALJ's conclusion that plaintiff's impairment did not meet or equal Listing 1.02 is supported by substantial evidence.

33

2.   ALJ's Analysis at
Step Four: RFC Assessment

Plaintiff objects to the ALJ's RFC assessment on two
grounds.  First, plaintiff asserts that the ALJ should not have
relied on the F.E.G.S. report because F.E.G.S. is not a medical
source (Pl.'s Mem., at 9).  Second, plaintiff argues that the ALJ
did not properly consider the objective medical evidence and that
"[i]f there were any doubts regarding the plaintiff's capacity
for work, the ALJ had an obligation to inquire of the treating
source or otherwise to seek [a] medical opinion" (Pl.'s Mem., at
7-8).  For the reasons stated below, I conclude that while the
ALJ did not err in relying on the F.E.G.S. report, he did err by
failing to develop the record.  In addition, although not raised
by the parties, I note that the ALJ failed to perform a function-
by-function assessment of plaintiff's RFC.

a.   Reliance on
F.E.G.S. Report

In reaching his RFC determination, the ALJ relied on
those portions of the F.E.G.S. report describing plaintiff's
ability to perform certain activities, such as washing dishes and
clothes, sweeping, mopping and vacuuming (Tr. 15).  Moreover, he
relied on that portion of the report noting a lack of abnormal

musculoskeletal findings on examination and that plaintiff's level of pain was only a three on a scale of one to ten (Tr. 15).

The ALJ did not commit legal error by relying on the F.E.G.S. report. First, the ALJ was obligated to consider plaintiff's self-reported ability to perform household chores. See Whipple v. Astrue, 479 F. App'x 367, 370-71 (2d Cir. 2012) (summary order) (ALJ must consider all of the available evidence in making RFC determination, including claimant's own descriptions of her daily activities); SSR 96-8p, 1996 WL 374184 at *5 (July 2, 1996).

Second, the ALJ did not err in relying on the report merely because F.E.G.S. is not a medical source. Whether something is a medical source is relevant when that source is providing a medical opinion. Cf. 20 C.F.R. § 404.1527. F.E.G.S. was not providing a medical opinion when it listed the activities plaintiff reported she could perform. Moreover, Dr. Romanoff, who is a medical source, signed the portions of the report indicating a lack of abnormal musculoskeletal findings and that plaintiff's level of pain was a three (Tr. 241). Therefore, the ALJ did not err by relying on the F.E.G.S. report. See, e.g., Nunez v. Astrue, 11 Civ. 8711 (PKC), 2013 WL 3753421 at *11-*12 (S.D.N.Y. July 17, 2013) (Castel, D.J.) (ALJ's RFC determination

supported by substantial evidence when he relied, in part, on F.E.G.S. report).

### b.  Failure to Develop the Record

An ALJ is required to obtain necessary medical records in order to make a proper RFC assessment.  20 C.F.R. § 404.1513(-b) ("Medical reports should include . . . (6) A statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings . . . . [L]ack of the medical source statement will not make the report incomplete."); see Hilsdorf v. Commissioner of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("An ALJ's obligation to obtain necessary medical records includes an obligation to obtain a proper assess-ment of the claimant's RFC.").  "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion[s] has improp-erly substituted his own opinion for that of a physician, and has committed legal error."  Hilsdorf v. Commissioner of Soc. Sec., supra, 724 F. Supp. 2d at 347; see Legall v. Colvin, 13 Civ. 1426 (VB), 2014 WL 4494753 at *4 (S.D.N.Y. Sept. 10, 2014) (Briccetti, D.J.) ("[T]he ALJ in this case committed legal error in arriving at his RFC determination without citation to any expert medical

opinion in support thereof."); Zorilla v. Chater, 915 F. Supp.
662, 666-67 (S.D.N.Y. 1996) (Koeltl, D.J.) ("The lay evaluation
of an ALJ is not sufficient evidence of the claimant's work
capacity; an explanation of the claimant's functional capacity
from a doctor is required.").

        The ALJ failed to support his RFC assessment with
proper expert medical evidence.  First, the list of activities
plaintiff could perform did not come from a medical expert;
rather, they came from plaintiff herself.  Second, although the
ALJ relied on Dr. Remer's reports in observing that "[t]here was
no indication that the claimant had difficulty sitting or per-
forming any postural activities [in December 2011]" (Tr. 14-15),
Dr. Remer never specifically explained the scope of plaintiff's
functional limitations.  See Alessi v. Colvin, No. 14-CV-7220
(WFK), 2015 WL 8481883 at *5 (E.D.N.Y. Dec. 9, 2015) (while
doctors made notes of symptoms, pain observations and courses of
treatment, they never opined on claimant's ability to stand, sit,
walk or lift).  Third, while the ALJ stated that the other
evidence in the record failed to show that plaintiff was re-
stricted from performing sedentary work (Tr. 16), there was also
no evidence in the record affirmatively demonstrating that
plaintiff was able to perform sedentary work.  See Legall v.
Colvin, supra, 2014 WL 4494753 at *4 n.8 ("Although Defendant

notes that no doctor has stated that Plaintiff is unable to perform light work . . ., neither the ALJ nor Defendant cites to any doctor who has stated that Plaintiff is able to do so."). Fourth, while Dr. Kaci was the only doctor to make findings on plaintiff's functional limitations in the record before the ALJ, the ALJ declined to give her opinion "much weight" (Tr. 15) because her opinion was rendered nearly two years after the relevant time period.

Under such circumstances, and in the absence of other medical evidence in the record regarding plaintiff's functional limitations,[16] the ALJ was under a duty to develop the record and obtain medical evidence before making his RFC determination.   See Seil v. Colvin, No. 15-CV-6275 (CJS), 2016 WL 1054759 at *5 (W.D.N.Y. Mar. 17, 2016); supra Section III.A.3.   The ALJ even acknowledged a gap in the record with respect to whether plaintiff's physical condition affected her ability to work, stating that evidence of plaintiff's RFC "would be much more probative if it came from a treating source . . . with treatment notes" than if it came from a consultative source (Tr. 33).   Although plaintiff did not submit such evidence within the time allowed by the

_____

[16]As noted before, see supra Section II.C.3, Dr. Silverman assessed plaintiff's RFC, but this evidence was not available to the ALJ before he made his decision.

38

ALJ (Tr. 10), nowhere in his decision does the ALJ note that he ever attempted to obtain the evidence.  See Legall v. Colvin, supra, 2014 WL 4494753 at *5 (ALJ's duty to develop was not satisfied where no opinion was provided regarding functional limitations, plaintiff's counsel failed to provide an RFC assessment despite a request from the ALJ and the ALJ did not seek one himself).

Therefore, because the ALJ failed in his duty to develop the record fully, remand is required.  See Rosa v. Callahan, supra, 168 F.3d at 79-80; Elliott v. Colvin, No. 13-CV-2673 (MKB), 2014 WL 4793452 at *17-*18 (E.D.N.Y. Sept. 24, 2014) (collecting cases); see also Lacava v. Astrue, 11 Civ. 7727 (WHP)(SN), 2012 WL 6621731 at *16-*17 (S.D.N.Y. Nov. 27, 2012) (Netburn, M.J.) (Report & Recommendation), adopted by, 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012) (Pauley, D.J.).  Because the ALJ's failure to discharge his duty to develop the record warrants remand, I do not address whether the ALJ's opinion regarding plaintiff's RFC was supported by substantial evidence.  See Lacava v. Astrue, supra, 2012 WL 6621731 at *11 ("These errors render the record incomplete and the Court unable to evaluate the final agency determination.").

c.  Failure to Perform
a Function-by-Function
Assessment of Plaintiff's RFC

Although not raised by the parties, I note that the ALJ did not perform a function-by-function assessment of plaintiff's RFC.  See supra Section III.A.2 (describing the requirement to perform a function-by-function assessment of a claimant's RFC). He was required to assess plaintiff's ability "to perform each of seven strength demands:  Sitting, standing, walking, lifting, carrying, pushing, and pulling.  Each function must be considered separately . . . ."  SSR 96-8p, 1996 WL 374184 at *5.  Moreover, he was required to discuss plaintiff's "'ability to perform these functions in an ordinary work setting on a regular and continuing basis'" and "'describe the maximum amount of each work-related activity [she] can perform based on the evidence.'"  Hilsdorf v. Commissioner of Soc. Sec., supra, 724 F. Supp. 2d at 348-49, quoting SSR 96-8p, 1996 WL 374184 at *7.  Instead, the ALJ made conclusory statements concerning plaintiff's abilities, which does not suffice.  Amrod v. Commissioner of Soc. Sec., No. 5:08-CV-464, 2010 WL 55934 at *17 (N.D.N.Y. Jan. 5, 2010).

Although the failure to perform a function-by-function assessment of plaintiff's RFC does not require remand per se, Cichocki v. Astrue, supra, 729 F.3d at 177-78; Johnson v. Commis-

40

sioner of Soc. Sec., 14 Civ. 2086 (FM), 2015 WL 5854044 at *6
(S.D.N.Y. Oct. 6, 2015) (Maas, M.J.), the ALJ should consider
whether such an assessment is appropriate on remand, should my
Report and Recommendation be adopted.

## IV.  Conclusion

For the foregoing reasons, I respectfully recommend
that plaintiff's motion (D.I. 17, 22) be granted.  I also recom-
mend that the Commissioner's motion (D.I. 24) be denied and that
this case be remanded to the SSA for further proceedings.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
George B. Daniels, United States District Judge, 500 Pearl
Street, Room 1310, and to the Chambers of the undersigned, 500
Pearl Street, Room 1670, New York, New York 10007.  Any requests
for an extension of time for filing objections must be directed
to Judge Daniels.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS

**WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE

REVIEW.   Thomas v. Arn, 474 U.S. 140, 155 (1985); United States

v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO

Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank

v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983) (per curiam).


Dated:   New York, New York
         January 12, 2017

                          Respectfully submitted,


                          _____
                          HENRY PITMAN
                          United States Magistrate Judge


Copies transmitted to:

All counsel


                              42